**CASE NO. 14-10923**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

NIGEN BIOTECH, LLC a Utah Limited Liability Company,

Plaintiffs - Appellant

vs.

GREG ABBOT, individually and as the Attorney General for the State of Texas

Defendant – Appellee

---

On Appeal from the
United States District Court for the Northern District of Texas Dallas Division
in Case No. 3:11-cv-3341-G

---

**BRIEF OF APPELLANT**

---

Jason M. Kerr, Esq.
PRICE PARKINSON & KERR
5742 W. Harold Gatty Drive
Salt Lake City, UT  84116
Telephone:  (801) 530-2900
Facsimile:   (801) 530-2957

John P. Snow
5742 W. Harold Gatty Drive
Salt Lake City, UT  84116
Telephone:  (801) 530-2900
Facsimile:   (801) 530-2957

Stephen P. Allison
HAYNES & BOONE
112 E. Pecan Street, Suite 1200
San Antonio, TX 78205
Telephone:  (214) 651-5000
Facsimile:   (214) 651-5940

Ronald Wayne Breaux
HAYNES & BOONE
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone:  (214) 651-5000
Facsimile:   (214) 651-5940

*Counsel for Appellant*

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

APPELLANTS:  NIGEN BIOTECH, a Utah Limited Liability Company

APPELLANTS ATTORNEYS:

Jason M. Kerr, Esq.
PRICE PARKINSON & KERR
5742 W. Harold Gatty Drive
Salt Lake City, UT  84116
Telephone:  (801) 530-2900
Facsimile:   (801) 530-2957

John P. Snow
5742 W. Harold Gatty Drive
Salt Lake City, UT  84116
Telephone:  (801) 530-2900
Facsimile:   (801) 530-2957

Stephen P. Allison
HAYNES & BOONE
112 E. Pecan Street, Suite 1200
San Antonio, TX 78205
Telephone:  (214) 651-5000
Facsimile:   (214) 651-5940

Ronald Wayne Breaux
HAYNES & BOONE
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone:  (214) 651-5000
Facsimile:   (214) 651-5940

*Counsel for Appellant*


APPELLEE: GREG ABBOT, as the ATTORNEY GENERAL OF THE
STATE OF TEXAS


APPELLEE'S ATTORNEYS:          Nancy K. Juren
                              Assistant Attorney General
                              General Litigation Division
                              P.O. Box 12548, Capitol Station
                              Austin, Texas, 78711
                              Telephone:  (512) 463-2120
                              Facsimile:  (512) 320-0667

                              Tommy Prud'Homme
                              Chief, Consumer Protection Division

                              Joyce Wein Iliya
                              Assistant Attorney General
                              Patricia Stein
                              Consumer Protection and Public
                              Health Division
                              1412 Main Street, Suite 810
                              Dallas, Texas 75202
                              Telephone:  (214) 696-7639
                              Facsimile:  (214) 969-7615

**<u>OTHER INTERESTED PERSONS OR ENTITIES</u>:**

NIGEN BIOTECH, LLC a Utah Limited Liability Company is a wholly owned subsidiary of Covarix, LLC.

## **STATEMENT REGARDING ORAL ARGUMENT**

The district court dismissed this case based upon an argument that was

conceded by the defendant-appellee below and is contrary to well-established law.

Although the reasons for reversing the district court's order are fairly

straightforward, oral argument will assist the Court in addressing the issue.

# **TABLE OF CONTENTS**

OTHER INTERESTED PERSONS OR ENTITIES: ................................................v

STATEMENT REGARDING ORAL ARGUMENT .............................................v

TABLE OF CONTENTS ........................................................................ vii

TABLE OF AUTHORITIES .................................................................. ix

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................2

STATEMENT OF THE CASE..................................................................2

STANDARD OF REVIEW .....................................................................6

SUMMARY OF ARGUMENT ..................................................................6

ARGUMENT ...................................................................................9

I.   The District Court Erred in Not Applying the Ex Parte Young Doctrine,
Which Precludes Its Invocation of Eleventh Amendment Immunity....................9

   A.   The *Ex Parte Young* Exception to Eleventh Amendment Immunity.......10

   B.   This Case Falls Squarely Within the Ex Parte Young Doctrine. .............12

   C.   The Cases On Which the Lower Court Relies Do Not Support Its
   Invocation of Eleventh Amendment Immunity................................................15

II.   None of the Arguments that the Attorney General Raised Below Can
Justify the District Court's Dismissal of NiGen's Claims...................................18

   A.   The Court Has Subject Matter Jurisdiction Over All of NiGen's Claims.
   19

   1.   The complaint alleges that the Attorney General violated NiGen's federal
   Constitutional rights............................................................................20

   2.   The Attorney General has repeatedly invoked federal law........................21

   B.   NiGen Has Standing to Bring Its Claims. ...............................................24

   C.   The Attorney General's Other Jurisdictional Arguments Made Below Are
   Likewise Unavailing..........................................................................27

D.    NiGen's Complaint States Valid Claims for Relief. ................................29

1.  The complaint states a valid First Amendment claim. ...................................29

2.  The complaint states a valid Procedural Due Process claim. .........................32

3.  The complaint states a valid Equal Protection claim. ...................................34

4.  The complaint states a valid commerce clause claim. ..................................36

5.  The complaint's Supremacy Clause claim is valid. ......................................39

CONCLUSION AND PRAYER ............................................................................40

CERTIFICATE OF SERVICE .............................................................................42

CERTIFICATE OF COMPLIANCE.....................................................................44

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Accord PHC, Inc. v. Pioneer Healthcare, Inc.,* 75 F.3d 75, 79 (1st Cir. 1996) ......25

*Aguilar v. Texas Dep't of Criminal* 160 F.3d 1052, 1054 (5th Cir. 1998) ....... 11, 16

*Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008) ..........................................39

*Am. Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917 (5th Cir. 1993) 7, 12, 14

*Anderson v. Abbott*, 83 Fed. Appx. 594, 594–95 (5th Cir. 2003)............................16

*Babbitt* v. *United Farm Workers National Union,* 442 U.S. 289, 298.(1979) ........25

*Bates v. State Bar of Arizona*, 433 U.S. 350, 384, (1977) .......................................30

*Bauer v. Texas*, 341 F.3d 352, 356 (5th Cir. 2003) ............................................6, 19

*Bell v. Hood*, 327 U.S. 678, 682-83 (1946) ............................................................20

*Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).................................6, 19

Brennan v. Stewart, 834 F.2d 1248, 1252 (5th Cir. 1988) .....................................10

*Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955)...................................................19

*Caterpillar, Inc. v. Williams* 482 U.S. 386, 390 (1987) .........................................22

*Central Hudson Gas & Electric Corp.,* 447 U.S. 557, 566 (1980) ........................30

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, Ct. at 3254-55 (1985) ....35

*Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 130 S. Ct. 2971,
    3016 (U.S. 2010) .................................................................................................39

*Dayton Casting Co.* v. *Full Mold Process, Inc.,* 404 F. Supp. 670, 673 (S.D. Ohio
    1975)....................................................................................................................25

*Ex parte Robinson*, 116 S.W.3d 794, 796 (Tex. Crim. App. 2003) ........................32

*Hafer v. Melo*, 502 U.S. 21, 25 (1991) ...................................................................15

*Halfmann v. USAG Ins. Servs.,* 118 F. Supp. 2d 714, 721 (N.D. Tex. 2000) .. 22, 24

*Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 212 (2d Cir. 2003) .......32

*Hillwood Dev. Co.* v. *Related Cos.,* 2006 U.S. Dist. LEXIS 24533 (N.D. Tex. Apr.
    28, 2006)..............................................................................................................25

*Hitt v. Pasadena*, 561 F.2d 606, 608 (5th Cir. Tex. 1977) .....................................19

*Hughes v. Oklahoma*, 441 U.S. 322, 326, (1979)...................................................37

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281(1997)..........................15

*In Re R. M. J.*, 455 U.S. 191, 201 (1982)................................................................30

*In Re R. M. J.*, 455 U.S. at 20 ................................................................................30

*K.P. v. LeBlanc*, 729 F.3d 427, 435 (5th Cir. 2013) ........................... 6, 9, 10, 11,12

*Kemppainen v. Texas*, 2011 WL 2181850, *3 (N.D. Tex. May 26, 2011)..............17

*Lowe v. SEC*, 472 U.S. 181, 234 (1985) .................................................................31

*Lujan v. Defenders of Wildlife,* 504 U.S. 555,560-561 (1992)................................25

*Mahone v. Addicks Utility Dist.*, 836 F.2d 921 (5th Cir. Tex. 1988) ............... 34, 35

*Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ................................................ 32,33

*Montez v. Dep't of the Navy*, 392 F.3d 147, 149–50 (5th Cir. 2004) ......................19

*N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 U.S. 114, 123 (2d Cir. 2009) ....................................................................................................................39

*Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978).......................................37

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)................................... 37, 38

*Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 340, 92 L. Ed. 2d 266, 106 S. Ct. 2968 (1986)…………………………………………………………………29

*Price v. Porter*, 351 Fed. Appx. 925, 926 (5th Cir. La. 2009) ...........................6, 19

Reata Const. Corp. v. City of Dallas, 197 S.W.3d 371, 375 (Tex. 2006) ........ 27, 28

*Reuber v. United States*, 750 F.2d 1039, 1053 (D.C. Cir. 1984)............................20

*Robinson v. State of Florida*, 378 U.S. 153, 156 (1964) ........................................34

*Saltz v. Tennessee Dep't of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992) ........................................................................................................ 10,11, 12, 14

*Sam L. Majors Jewelers* v. *ABX,* 117 F.3d 922 (5th Cir. Tex.1997).....................22

*Scally v. Tex. State Bd. of Med. Examiners*, 351 S.W.3d 434 (Tex. App. Austin 2011)...............................................................................................................33

*Smith v. Cal.*, 361 U.S. 147, 157 (1959) ..............................................................39

*SSC Corp. v. Town of Smithtown*, 66 F.3d 502 (2d Cir. N.Y. 1995)................ 37, 38

*Texans Against Censorship v. State Bar*, 888 F. Supp. 1328, 1995 U.S. Dist. LEXIS ...........................................................................................................30

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002).............................................................................................................12

*Verizon*, 535 U.S. at 645–646 ...............................................................................14

*Weaver v. State*, 265 S.W.3d 523 (Tex. App. Houston 1st Dist. 2008)..................32

*Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886) ...............................................34

*YWCA* v. *HMC Entertainment, Inc.,* 1992 U.S. Dist. LEXIS 14713.......................25

*Zauderer v. Office of Disciplinary Counsel of Supreme Court*, 471 U.S. 626 (U.S. 1985) ........................................................................................................ 29, 30

*Zeigler v. Jackson*, 638 F.2d 776, 779 (5th Cir. 1981)...........................................34

## Statutes

28 U.S.C. § 1291 ...................................................................................................1

28 U.S.C. §§ 1331, 1343, 1367...............................................................................1

42 U.S.C. § 1983 ...................................................................................................1

397 U.S. at 142.................................................................................................. 38, 39

Tex. Bus. & Com. Code §§ 17.01..................................................................... 21, 28

Texas Education Code §38.011 (d) (I)....................................................................23

Texas Food, Drug, and Cosmetic Act § 431.001.002....................................... 23,24

U.S. CONST. art. I, § 8, cl. 3 .................................................................................37

**Other**

Fed. R. App. P.
4(a)(1)(A)…………………………………………………………………..1

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Appellant NiGen Biotech, LLC's ("NiGen") claims pursuant to 28 U.S.C. §§ 1331, 1343, 1367 and 2201 and 42 U.S.C. § 1983.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291, which grants the Court jurisdiction over appeals from final decisions of the district courts. NiGen herein appeals from a July 21, 2014 order and judgment of the same date that dismissed all of NiGen's claims against Appellee Greg Abbott (the "Attorney General") in his official capacity as the Attorney General of the State of Texas. [Record (hereinafter, "ROA.") at 14-10923.1116–14-10923.1120[1].]

On August 18, 2014, within the 30 days allowed under Fed. R. App. P. 4(a)(1)(A), NiGen timely filed its Notice of Appeal. [ROA. 1121–1123.]

The order from which NiGen appeals is a final order that disposed of all of NiGen's claims. [ROA. 1116–1120.]

---

[1] Further citations to the Record shall not repeat the "14-10923." prefix for each page of the record and shall simply set forth the page number that follows this prefix on the bottom of each page.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.    The district court dismissed all of NiGen's claims against the Attorney General of Texas on the basis of Eleventh Amendment immunity, even though it is well-established that the Eleventh Amendment does not bar claims seeking injunctive or declaratory relief and even though the Attorney General conceded that point below.  Did the district court err by dismissing the claims seeking non-monetary relief on the basis of Eleventh Amendment immunity?

II.    The Attorney General raised other unreached grounds for dismissal that are likewise foreclosed by well-established law and have no application here. Do these alternative, unreached arguments justify the district court's dismissal order?

## STATEMENT OF THE CASE

This appeal involves the question of whether NiGen can bring suit to enjoin the Attorney General of Texas in his official capacity from continuing to violate NiGen's rights under the United States Constitution.  NiGen is a manufacturer of dietary supplement products sold in Texas.  [ROA. 716 (NiGen's Second Amended Complaint filed June 15, 2012, ¶ 6; ROA. 1116 (Memorandum Opinion and Order

entered by the lower court on July 21, 2014 (included in the Record at ROA. 1116–1119) (hereinafter, "Order")) at 1.]

On October 26, 2011, the office of the Attorney General sent a letter to NiGen warning NiGen that its marketing of its products was false, misleading, or deceptive and violated federal and state law and warned NiGen to stop advertising and selling the products in Texas. [ROA. 723–725 (¶¶ 37–39, 47–48).] Without providing NiGen an opportunity to respond to these allegations and without conducting any sort of investigation to verify the veracity of its allegations regarding NiGen's products, the Attorney General's office also contacted NiGen's customers and threatened them with fines if they continued to sell NiGen's products. [ROA. 728 (¶¶ 63–64).] NiGen met with the Attorney General's office in an attempt to provide evidence substantiating all claims made on NiGen's products' packaging, but the Attorney General's office refused to even consider such evidence. [ROA. 725–726 (¶¶ 49–53).] As a direct result of receiving threatening communication from the Attorney General concerning NiGen's products, NiGen's customers Walgreens and CVS removed NiGen's products from its shelves nationwide, and Walmart removed the products from its shelves throughout Texas, causing millions of dollars of lost revenue and other harm to NiGen. [ROA. 728 (¶¶ 63–64).]

NiGen thereafter brought suit against the Attorney General in the United States District Court for the Northern District of Texas seeking, *inter alia*, declaratory and injunctive relief and money damages, alleging that the Attorney General's actions constituted an ongoing violation of NiGen's rights under the First Amendment, the Fourteenth Amendment, the Commerce Clause and the Supremacy Clause of the United States Constitution and that the Attorney General tortuously interfered with NiGen's business relationships.  [ROA. 729–737.]  The Attorney General moved to dismiss on numerous grounds, including that NiGen's claim for monetary damages was barred by the Eleventh Amendment.  [*See generally* Brief in Support of Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint filed on July 6, 2012 (ROA. 769–813); Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint filed on July 27, 2012 (ROA. 861–892); and Reply in Support of Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint filed on August 31, 2012 (ROA. 1106–1115).]

The Attorney General argued Eleventh Amendment immunity, but only contended that this immunity is applicable to NiGen's request for money damages.  [ROA. 789–791.]  The Attorney General never argued that he should be immune from NiGen's claims for declaratory or injunctive relief under the Eleventh

Amendment. [*Id.*] The Attorney General specifically conceded that under the *Ex Parte Young* doctrine, the Eleventh Amendment did *not* bar NiGen's injunctive and declaratory claims. [*Id.* at 789 n. 54.]

Nevertheless, on July 21, 2014, the district court broadly dismissed *all* of NiGen's claims on the basis of Eleventh Amendment immunity—including those seeking only non-monetary relief. [ROA. 1116, 1118–1119.] Specifically, the lower court reasoned that:

> [S]ince suits against state officials in their official capacity should be treated as suits against the state, [the Attorney General] is entitled to the same Eleventh Amendment immunity as the State of Texas. The Eleventh Amendment prohibits suits in federal court against state governments by a state's own citizens. As such, [the Attorney General] is immune to suit in federal court under the Eleventh Amendment of the United States Constitution.

[ROA. 1118–1119 (citations omitted).] Other than citing three cases in a string cite, the district court set forth no further analysis for its dismissal of *all* of NiGen's claims, did not explain why its reasoning was broader than even the Attorney General's own argument, and made no mention of *Ex Parte Young* and the well-established doctrine permitting suits against state officials for injunctive and declaratory relief. [*See generally* ROA. 1116–1119.]

NiGen filed its Notice of Appeal before the lower court on August 18, 2014. [ROA. at 1121–1123.]

## STANDARD OF REVIEW

The Court reviews *de novo* an order dismissing a case under Federal Rule of Civil Procedure 12 and takes the factual allegations of the complaint as true, resolving any ambiguities in NiGen's favor.   *See*, *e.g.*, *Bauer v. Texas*, 341 F.3d 352, 356 (5th Cir. 2003); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992); *Price v. Porter*, 351 Fed. Appx. 925, 926 (5th Cir. La. 2009); *K.P. v. LeBlanc*, 729 F.3d 427, 435 (5th Cir. 2013) (applying de novo review specifically on issue of Eleventh Amendment immunity).

## SUMMARY OF ARGUMENT

The district court erred in finding Eleventh Amendment immunity because it failed to apply—or even consider—the *Ex Parte Young* doctrine, which renders Eleventh Amendment immunity inapplicable to the facts of this case.  Indeed, the district court's broad ruling went far beyond even the Attorney General's own argument.  The Attorney General limited its Eleventh Amendment immunity argument to NiGen's claim for damages; but the district court applied this immunity to *all* of NiGen's claims.

Although the Eleventh Amendment generally provides immunity from suits brought against a state, for over a hundred years the Supreme Court has recognized an exception to this immunity: the *Ex Parte Young* doctrine.  This doctrine renders

Eleventh Amendment immunity inapplicable where a plaintiff seeks declaratory or injunctive relief against a state official in his or her official capacity for violations of federal law. The Attorney General himself acknowledged this doctrine below, conceding that the Eleventh Amendment does not bar "suits brought for prospective injunctive relief against individuals acting in their official capacity as agents of the State." [ROA. 789 n. 54 (citing *Ex Parte Young*).]

The facts in the record bring this matter squarely within the *Ex Parte Young* exception. First, NiGen sued the Attorney General in his official capacity as Attorney General of the State of Texas. Second, NiGen's allegations involve the Attorney General's ongoing violations of various provisions of our federal constitution. Lastly, NiGen's claims seek declaratory and injunctive relief. Had the lower court properly considered *Ex Parte Young*, it would not have dismissed NiGen's claims for declaratory and injunctive relief.[2]

---

[2] NiGen's complaint contains one cause of action—tortious interference—that seeks monetary relief. [ROA. 734–735.] NiGen notes that with respect to this cause of action, the *Ex Parte Young* doctrine does not apply. Each of NiGen's other five causes of action, however, falls squarely within the doctrine and is thus exempt from any invocation of Eleventh Amendment immunity. *See*, *e.g.*, *Am. Bank & Trust Co.*, 982 F.2d 917, 920 (5th Cir. 1993) ("The Supreme Court, though it has clarified that *Young* cannot be extended to permit a suit for equitable monetary restitution from the state treasury for a past breach of a legal duty, has reaffirmed the basic holding of *Young* as to purely prospective relief on numerous occasions." (collecting cases) (citation omitted)). Although *Ex Parte Young* does not apply to NiGen's damages claim, the Attorney General's actions amount to a waiver of Eleventh Amendment immunity. [*See* discussion in Argument section, *infra*, Part II.C.]

In addition to erring in failing to account for the *Ex Parte Young* doctrine, none of the cases to which the lower court cites support its invocation of Eleventh Amendment immunity. Rather, all of these cases further sustain application of *Ex Parte Young* to the facts of this case.

The Attorney General also raised additional arguments for dismissal before the district court. But none of these can form an alternative basis for upholding the district court's order of dismissal. The Attorney General raised the issue of subject matter jurisdiction, but this argument fails because NiGen's complaint set forth Constitutional claims requiring the interpretation of federal law. The Attorney General also contended below that NiGen lacks standing. But NiGen's standing is established because it alleges that it suffered injury in fact as a direct result of the Attorney General's baseless letters threatening litigation. The Attorney General lastly contended that NiGen failed to state claims, but the complaint sets forth facts supporting all necessary elements to properly state its First Amendment, equal protection, due process, commerce clause, supremacy clause, tort, and damages claims. None of the Attorney General's arguments support dismissal.

For the foregoing reasons, and as set forth in more detail below, the lower court's dismissal of NiGen's claims constituted clear error, and that decision should be reversed.

## ARGUMENT

**I.    The District Court Erred in Not Applying the Ex Parte Young Doctrine, Which Precludes Its Invocation of Eleventh Amendment Immunity**

The district court erred in finding Eleventh Amendment immunity because it failed to apply—or even consider— a "gaping hole" in the protection afforded under the Eleventh Amendment: the *Ex Parte Young* doctrine, which precludes application of Eleventh Amendment immunity where a plaintiff seeks declaratory and injunctive relief against a state official in his or her official capacity for violations of federal law.  *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013).  The allegations of NiGen's complaint fall squarely within this exception: they seek declaratory and injunctive relief against the Attorney General in his official capacity as Attorney General for unconstitutionally prohibiting NiGen's sale of its products in Texas.  [ROA. 715, 723, 725, 728–734, 736 (¶¶ 2–3, 37–39, 48, 63–64, 75, 78–81, 83, 85, 87–94, 99–102, 104–105, 114, 116).]

The Attorney General specifically conceded that the *Ex Parte Young* doctrine does not apply to NiGen's declaratory and injunctive claims.  [ROA. 789 n. 54.]   The Attorney General never asked the district court to apply Eleventh Amendment immunity to all of NiGen's claims.  Such application of Eleventh Amendment immunity would be overbroad and run afoul of the *Ex Parte Young*

doctrine.  Yet this overbroad application is the precise basis upon which the district court dismissed all of NiGen's claims.

The district court did not apply or even analyze the *Ex Parte Young* doctrine, and instead dismissed NiGen's complaint in its entirety, reasoning that:

> [S]ince suits against state officials in their official capacity should be treated as suits against the state, [the Attorney General] is entitled to the same Eleventh Amendment immunity as the State of Texas.  The Eleventh Amendment prohibits suits in federal court against state governments by a state's own citizens.  As such, [the Attorney General] is immune to suit in federal court under the Eleventh Amendment of the United States Constitution.

[ROA. 1118–1119 (citations omitted).]  But as this Court has emphasized, "'a gaping hole in the shield of sovereign immunity created by the eleventh amendment and the Supreme Court' is the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)."  *Saltz v. Tennessee Dep't of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992) (quoting *Brennan v. Stewart,* 834 F.2d 1248, 1252 (5th Cir. 1988)).  The Court reviews questions of Eleventh Amendment immunity *de novo.  K.P. v. LeBlanc*, 729 F.3d 427, 435 (5th Cir. 2013).

## A.     The *Ex Parte Young* Exception to Eleventh Amendment Immunity.

Although the Eleventh Amendment generally bars suits in federal court against a state, under the *Ex Parte Young* rule "[a] suit is not 'against' a state . . . when it seeks prospective, injunctive relief from a state actor, in her official

capacity, based on an alleged ongoing violation of the federal constitution." *LeBlanc*, 729 F.3d at 439. "This doctrine holds that acts by state officials which are contrary to federal law cannot have been authorized or be ratified by the state; and suits seeking to enjoin such wrongful and unauthorized acts are not suits against the state and a federal courts' injunction against such wrongful acts is not a judgment against the state itself." *Saltz*, 976 F.2d at 968. *See also Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) ("In *Ex Parte Young,* the Supreme Court carved out an exception to Eleventh Amendment immunity. The Court held that enforcement of an unconstitutional law is not an official act because a state cannot confer authority on its officers to violate the Constitution or federal law." (citations omitted)); *LeBlanc*, 729 F.3d at 439 ("[T]he *Ex Parte Young* rule[] 'is based on the legal fiction that a sovereign state cannot [authorize an agent to] act unconstitutionally.'" (citations omitted, third brackets in original)).

In other words, contrary to the lower court's cursory disposition of the matter, the Eleventh Amendment does not automatically prohibit suit against a state actor in his official capacity. Under *Ex Parte Young*, further inquiry is required. The inquiry is straightforward.

As this Court has iterated, "The essential ingredients of the *Ex parte Young* doctrine are that a suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Saltz*, 976 F.2d at 968. *See also Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" (citations omitted)); *Am. Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920 (5th Cir. 1993) ("[T]he Eleventh Amendment does not bar a suit in federal court against a state official to enjoin his enforcement of a state law alleged to be unconstitutional."); *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013) (Eleventh Amendment does not bar a suit that "seeks prospective, injunctive relief from a state actor, in her official capacity, based on an alleged ongoing violation of the federal constitution.").

## B.    This Case Falls Squarely Within the Ex Parte Young Doctrine.

The "essential ingredients" for invocation of the *Ex Parte Young* doctrine are all present in this case. First, NiGen's suit has been brought against an individual person, Greg Abbott (the Attorney General), in his official capacity as Attorney

General of the state of Texas.  [ROA. 715 (¶ 2).]  Second, all but one of NiGen's

six causes of action seek prospective injunctive and declaratory relief.  [ROA. 729,

731, 732–734, 736 (¶¶ 75, 83, 88, 93–94, 101–102, 105, 114, 116).]  Lastly, the

Complaint alleges an ongoing violation of federal law: that the Attorney General's

actions unconstitutionally restrain NiGen's rights under the First Amendment, the

Fourteenth Amendment, and the Commerce Clause of the United States

Constitution.  [ROA. 715, 723–725, 728–734 (¶¶ 3, 37–39, 48, 63–64, 75, 78–81,

83, 85, 87–94, 99–102, 104–105).]

The district court, however, failed to take note of these factors (or analyze in

any way) the implications of the *Ex Parte Young* doctrine on its invocation of

Eleventh Amendment immunity on the Attorney General's behalf—even though

the Attorney General himself specifically conceded that *Ex Parte Young* renders

Eleventh Amendment immunity inapplicable to NiGen's injunctive and declaratory

claims.  [ROA. 789 n. 54.]  Had the district court properly considered and applied

*Ex Parte Young*, it should have found, as have many courts before it, as set forth

below, that Eleventh Amendment immunity cannot provide a basis for dismissal

under the facts of this case.  The district court's reliance on Eleventh Amendment

immunity should be reversed and NiGen's declaratory and injunctive claims

allowed to proceed.

Applicable case law confirms the lower court's error.  In *Am. Bank & Trust Co.*, the plaintiff sued the commissioner of financial institutions for the state of Louisiana following the commissioner's enforcement of a state statute prohibiting the plaintiff's efforts to sell insurance.  *Am. Bank & Trust Co.*, 982 F.2d at 918–919.  In response, the commissioner "moved to dismiss on the ground that . . . the suit against him in his official capacity was in substance a suit against the State of Louisiana and thus barred by the Eleventh Amendment."  *Id*. at 919.  The district court accepted this argument and dismissed the suit, citing Eleventh Amendment immunity.  *Id*. at 920.  In reversing that ruling, this Court held that under the facts of that case, the *Ex Parte Young* doctrine rendered Eleventh Amendment immunity inapplicable.  *Id*.  The suit sought declaratory and injunctive relief and named the commissioner only in his official capacity.  *Id*. at 919.  "No challenge is made to the Commissioner's ability in a proper case to invoke the Eleventh Amendment; rather, it is simply argued—correctly—that because of the nature of relief sought he must contend with the *Young* exception."  *Id*. at 921.  *See also Saltz*, 976 F.2d at 967–968 (finding *Ex Parte Young* inapplicable where plaintiff, unlike NiGen, failed to sue the department head in his official capacity and instead brought suit directly against the department itself);*Verizon*, 535 U.S. at 645–646 (overturning application of Eleventh Amendment immunity, noting, "the inquiry into whether

suit lies under *Ex parte Young* does not include an analysis of the merits of the claim," and that "'[a]n *allegation* of an ongoing violation of federal law . . . is ordinarily sufficient'" (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281(1997) (emphasis added by *Verizon* court))).

The same holds true in the instant matter. NiGen sued the state Attorney General in his official capacity only, seeking prospective injunctive and declaratory relief. Accordingly, the *Young* doctrine applies and the district court improperly applied Eleventh Amendment immunity in dismissing NiGen's suit.

### C.     The Cases On Which the Lower Court Relies Do Not Support Its Invocation of Eleventh Amendment Immunity.

The district court failed even to cite or acknowledge *Ex Parte Young*, and instead summarily cited three cases that do not support the court's broad application of Eleventh Amendment immunity. The cited cases in fact support application of the *Ex Parte Young* doctrine.

The lower court began its analysis by accepting the Attorney General's misplaced argument that "since suits against state officials in their official capacity should be treated as suits against the state, *e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991), he is entitled to the same Eleventh Amendment immunity as the State of Texas." [ROA. 1118–1119.] The *Hafer* decision, however, addressed the issue of

"whether state officers may be held personally liable" for actions taken in their official capacities, not the issue of whether Eleventh Amendment immunity applies where a state officer is sued only in his official capacity, as is the case in the matter at hand. *Hafer*, 502 U.S. at 24. In fact, the *Hafer* Court specifically noted that the *Ex Parte Young* doctrine rejected the theory that "suits, although brought against state officials in their personal capacities, were in substance actions against the State . . . and therefore barred by the Eleventh Amendment. *Id*. at 30. Therefore, the very case the lower court cited in support of its acceptance of the Attorney General's argument expressly discounts that argument.

The other cases cited by the district court even more explicitly reject the court's invocation of Eleventh Amendment immunity under the facts of this case. *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998), applies only to suit brought against a state or a state entity, not an individual in his official capacity. Ironically, unlike the lower court, *Aguilar* specifically analyzed the *Ex Parte Young* "exception to Eleventh Amendment immunity," ruling that the doctrine did not apply because the plaintiff in that case "sued [the state agency] itself for injunctive relief, not any state official in his or her individual capacity as an agent of the state." *Aguilar*, 160 F.3d at 1054. Similarly, *Anderson v. Abbott*, 83 Fed. Appx. 594, 594–95 (5th Cir. 2003) did not apply the *Ex Parte Young*

exception only because the plaintiff there failed to allege any violation of federal law. *Id.* at 595 (noting that plaintiff "has not alleged facts showing that the [refusal to reduce a child support payment] was pursuant to an unconstitutional state policy implemented by the Attorney General"). In contrast, the instant case does not involve this shortcoming. NiGen's complaint repeatedly alleges that the Attorney General's actions violate its rights to free speech, due process, and other constitutional rights. [ROA. 715, 723–725, 728–734 (¶¶ 3, 37–39, 48, 63–64, 75, 78–81, 83, 85, 87–94, 99–102, 104–105).] The *Anderson* holding therefore supports invocation of *Ex Parte Young* and not application of Eleventh Amendment immunity. The lower court's reliance on *Anderson* is hence misplaced.

Finally, the lower court's citation to *Kemppainen v. Texas*, 2011 WL 2181850, *3 (N.D. Tex. May 26, 2011) is likewise misplaced because the plaintiff there sued the wrong state official. *Id.* The complaint there made allegations concerning an unconstitutional denial of the plaintiff's right to access the courts and named, among other parties, the attorney general in his official capacity as defendant. *Id.* The complaint, however, failed to allege that the attorney general's office was in any way involved with the alleged constitutional violation. *Id.* The court hence found that the *Ex Parte Young* doctrine did not apply vis-à-vis the

attorney general.  In contrast, the complaint here repeatedly alleges that the attorney general's office directly promulgated the constitutional violations imposed against NiGen through letters and in-person meetings with NiGen.  [ROA. 723–729 (¶¶ 37–68).]  The *Kemppainen* court's reasoning for withholding application of *Ex Parte Young* is therefore inapplicable here.

In short, none of the cases on which the lower court relied to invoke Eleventh Amendment immunity actually supports that invocation.  They instead support application of the *Ex Parte Young* exception, which would preclude, not support, dismissal of the complaint.  The lower court's failure to apply—or even discuss—the *Ex Parte Young* exception constitutes plain error, and its Order dismissing NiGen's claims for declaratory and injunctive relief should be reversed.

**II.    None of the Arguments that the Attorney General Raised Below Can Justify the District Court's Dismissal of NiGen's Claims.**

As noted above, the district court's order dismissing all of NiGen's claims based on Eleventh Amendment immunity went well beyond what the Attorney General asked for and beyond the limits of applicable case law.  In addition, none of the other arguments that the Attorney General raised below can justify dismissal of NiGen's claims.

As this Court has often stated, "a complaint is not subject to dismissal unless 'it appears to be a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of its allegations. Even then, a court ordinarily should not dismiss the complaint except after affording every opportunity [for] the plaintiff to state a claim upon which relief [can] be granted.'" *Hitt v. Pasadena*, 561 F.2d 606, 608 (5th Cir. Tex. 1977) (brackets in original) *citing Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955).

The Court reviews dismissal under Rule 12 *de novo*, and all allegations of the complaint are assumed to be true, with any ambiguities resolved in favor of NiGen. *See*, *e.g.*, *Bauer v. Texas*, 341 F.3d 352, 356 (5th Cir. 2003); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992); *Price v. Porter*, 351 Fed. Appx. 925, 926 (5th Cir. La. 2009). *See also Montez v. Dep't of the Navy*, 392 F.3d 147, 149–50 (5th Cir. 2004) (ruling that the Court applies a 12(b)(6) standard to attacks on jurisdiction under Rule 12(b)(1)).

### A.    The Court Has Subject Matter Jurisdiction Over All of NiGen's Claims.

The Attorney General argued below that the Court lacks subject matter jurisdiction over NiGen's claims.[3]  That argument fails, however, for at least two

---

[3] *See generally* ROA. 782–792.

reasons: (1) the complaint alleges that the Attorney General's actions violated NiGen's constitutional rights and (2) the Attorney General invoked federal law and federal law must accordingly be interpreted.

A claim can only be dismissed for lack of subject matter jurisdiction where the claim "'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial or frivolous.'" *Reuber v. United States*, 750 F.2d 1039, 1053 (D.C. Cir. 1984) (citing *Bell v. Hood*, 327 U.S. 678, 682-83 (1946) (other citations omitted)).

### 1.    The complaint alleges that the Attorney General violated NiGen's federal Constitutional rights.

The complaint alleges causes of action under the First and Fourteenth Amendments and under the Supremacy Clause and the Commerce Clause.  Thus, multiple federal questions are squarely at issue and the Court therefore has subject matter jurisdiction over NiGen's claims.

The complaint establishes that the Attorney General sent letters to NiGen and its retailers alleging that that it is illegal to sell NiGen's products, which allegedly contain false and misleading statements.  [ROA. 723–725, 728.]  All of the statements made on NiGen's products' packaging, however, are true.  [ROA. 716–723.]  Moreover, the Attorney General does not have evidence to contest the

20

literal truth of NiGen's statements made on its products' packaging. [ROA. 715.]

Nevertheless, the Attorney General told NiGen's customers that NiGen's products' packaging is misleading and threatened to assess thousands of dollars in fines against NiGen and its retailers if they did not immediately stop marketing and selling NiGen's products. [ROA. 728.] These measures in effect amounted to a total prohibition of NiGen's advertising and sale of its products in Texas.

The complaint asserts that these actions violated NiGen's right to commercial free speech, because all statements made on its packaging are true. The complaint also asserts that the Attorney General violated NiGen's right to due process of law and equal protection because the Attorney General took these measures without providing NiGen an opportunity to respond. Furthermore, the Complaint alleges that the Attorney General violated the Commerce Clause. For all of these reasons, NiGen's claims fall squarely within this Court's subject matter jurisdiction.

### 2.    The Attorney General has repeatedly invoked federal law.

The Court also has subject matter jurisdiction because, even absent NiGen's constitutional claims, the Attorney General has repeatedly invoked and relied upon federal law in contending that NiGen has violated Texas' Deceptive Trade

Practices Act ("DTPA").  *See* Tex. Bus. & Com. Code §§ 17.01 *et seq.*

The Supreme Court has held that a case may "'arise under' the laws of the United States if a well-plead complaint establishes that its right to relief under the state law requires resolution of a substantial question of federal law in dispute between the parties." *Halfmann v. USAG Ins. Servs.,* 118 F. Supp. 2d 714, 721 (N.D. Tex. 2000) (citation omitted).  Federal jurisdiction exists when a federal question is presented on the face of a plaintiff's properly pleaded complaint.  *Id.* at 717. *Sam L. Majors Jewelers* v. *ABX,* 117 F.3d 922 (5th Cir. Tex.1997) *(quoting Caterpillar, Inc. v. Williams* 482 U.S. 386, 390 (1987).

In the Attorney General's communications that gave rise to NiGen's claims, the Attorney General repeatedly invoked federal law in support of his contentions. [ROA. 728, 998–1000, 1005–1007, 1012–1014.]  Specifically, the Attorney General asserted to NiGen and its retail customers that:

> The hCG-Iabeled products NiGen advertises and sells purport to be dietary supplements although they have the name of a prescription drug, hCG, on their labels and in labeling and advertising.  NiGen's hCG-labeled products make claims for weight loss, similar to the off-label weight loss claims included in the FDA-required warning for the prescription drug . . . .
>
> It is the State's position that it is false, misleading, or deceptive to advertise and sell a dietary supplement whose name includes that of a prescription drug. Additionally, using the term hCG on a weight loss

> product, even with a disclaimer that hCG is not really in the product,
> is false, misleading or deceptive since this claim is trying to mimic
> claims that FDA[the federal Food and Drug Administration] considers
> off-label for the prescription drug.

[ROA. 998–1000, 1005–1007, 1012–1014.]  These communications repeatedly

refer to the Federal Food and Drug Administrations' regulations, which the

Attorney General claims NiGen is violating.  [*See id*. ("the FDA requires a black

box warning . . . .").]

Furthermore, the Attorney General's assertions in these communications

regarding a "dietary supplement" and accusations of mimicry concerning "claims

that FDA considers off-label" are purely questions of Federal law because: (1)

Texas law does not define what is or is not a "dietary supplement"; and (2) Federal

law regulates dietary supplement labeling, not Texas law.

First, Texas law does not define "dietary supplement" other than to note that

it has the meaning set forth in federal law.  *See* Texas Food, Drug, and Cosmetic

Act § 431.002; Texas Education Code §38.011 (d) (I).  Thus, whether a product is

a dietary supplement is a question of federal law.[4] Also, while the Texas

---

[4] *See Healthpoint, LTD. v. Stratus Pharmaceuticals, Inc.,* 273 F.Supp. 2d 769, 784 (W.D.
TX. 2001) (definition of dietary supplement a matter of federal law, not state law, even where
labeling a product as a "dietary supplement was false in the ordinary sense . . . ") *quoting
Braintree Laboratories, Inc. v. Nephro-Tech, Inc.,* 1997 US Dist. Lexis 2372 at *7.

Legislature adopted statutes regulating foods, drugs, and cosmetics, modeled on the Federal Food, Drug and Cosmetic Act, the Texas Food Drug and Cosmetic Act does not mention dietary supplements. *See* Texas Food, Drug, and Cosmetic Act § 431.001 *et seq.* Therefore, Texas has elected not to regulate dietary supplements, leaving federal law solely applicable. Moreover, in NiGen's meetings with the Attorney General leading up to the filing of this lawsuit, the Attorney General repeatedly relied on federal law as the basis for their allegations. [ROA. 725–728.]

Therefore, the Court has subject matter jurisdiction over NiGen's claims because the "complaint establishes that [NiGen's] right to relief under the state law requires resolution of a substantial question of federal law in dispute between the parties." *Halfmann* v. *USAG Ins. Servs.,* 118 F. Supp. 2d 714 (N.D. Tex. 2000).

### B.     NiGen Has Standing to Bring Its Claims.

The Attorney General wrongly asserted below that NiGen lacks standing to bring its claims because his actions allegedly did not directly harm NiGen.[5] In order to demonstrate the "irreducible constitutional minimum of standing," the Supreme Court requires that a plaintiff meet the following three elements:

> First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized,

---

[5] [ROA. 783–784.]

and (b) actual or imminent, not conjectural or hypothetical.  Second,
there must be a causal connection between the injury and the conduct
complained of - the injury has to be fairly traceable to the challenged
action of the defendant, and not the result of the independent action of
some third party not before the court. Third, it must be "likely" as
opposed to merely "speculative," that the injury will be redressed by a
favorable decision.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555,560-561 (1992) (citations omitted);

*Babbitt* v. *United Farm Workers National Union,* 442 U.S. 289, 298.(1979) ("A

plaintiff who challenges a statute must demonstrate a realistic danger of sustaining

a direct injury as a result of the statute's operation or enforcement. But one does

not have to await the consummation of threatened injury to obtain preventative

relief . . . "); *Hillwood Dev. Co.* v. *Related Cos.,* 2006 U.S. Dist. LEXIS 24533

(N.D. Tex. Apr. 28, 2006) ("'A threat of litigation, if specific and concrete, can

indeed establish a controversy upon which declaratory judgment can be based.'"

(citation omitted)).[6]

---

[6] *See also YWCA* v. *HMC Entertainment, Inc.,* 1992 U.S. Dist. LEXIS 14713, *4
(S.D.N.Y. Sept. 25, 1992) (holding that letter stating that the defendant was "fully prepared to
take all necessary legal action in order to protect [defendant's] work" was sufficient to show an
"actual threat of litigation" and created a case or controversy for the purposes of the Declaratory
Judgment Act). Letters indicating a party's intent to take future legal action have been deemed a
threat of litigation sufficient to create an actual controversy for adjudication. *YWCA,* 1992 U.S.
Dist. LEXIS 14713, *4; *Accord PHC, Inc. v. Pioneer Healthcare, Inc.,* 75 F.3d 75, 79 (1st Cir.
1996) (letter threatening litigation enough to create controversy for declaratory relief); *Dayton
Casting Co.* v. *Full Mold Process, Inc.,* 404 F. Supp. 670, 673 (S.D. Ohio 1975) (letters
containing "thinly veiled threats of suit" constitute actual controversy).

All of these elements are met here.  NiGen suffered injury in fact caused directly by the Attorney General's threatening communications with NiGen's customers, which directly caused NiGen's customers to remove NiGen's products from their shelves, causing millions of dollars of damage to NiGen.  [ROA. 728.]

The Attorney General's communications with NiGen's customers could not be ignored—a retailer cannot afford to risk incurring fines and other harm by refusing to comply with threatening government communications.  Thus the Attorney General's actions had the same effect as a preliminary injunction telling retailers to remove the product from their shelves.  There is a direct causal connection that satisfies standing requirements.

Finally, NiGen has standing because its injuries will be redressed by a favorable decision by the Court.  If the district court ultimately determines that NiGen's advertising claims are true and not misleading, NiGen will be free to sell its products in Texas and the NiGen's retailers will be willing to put the products back on shelf nationwide.

The Attorney General also contended below that NiGen lacks standing because no "case or controversy" exists that can give rise to declaratory relief.  [ROA. 784–789.]  Among other things, the Attorney General contended that it lacked authority to enforce federal law, so no case or controversy can exist.  [*Id*.]

This argument misses the mark.  As set forth above, the Attorney General's actions led directly to harm to NiGen.  The Attorney General repeatedly invoked federal law in the process.  Even the threat of litigation is enough to create a controversy that can give rise to declaratory relief.  [*See*, *supra*, footnote 6.]  NiGen accordingly has standing.

### C.     The Attorney General's Other Jurisdictional Arguments Made Below Are Likewise Unavailing.

Although the Attorney General acknowledges that Eleventh Amendment immunity does not apply to NiGen's declaratory and injunctive claims [*see* ROA. 789 n. 54], he argued below that the Eleventh Amendment precludes a claim for money damages against him.  [ROA. 789–791.]  His argument fails, however, because his actions waived his ability to invoke Eleventh Amendment immunity.

While true that the Eleventh Amendment typically renders a state actor immune in federal court from a claim for money damages, NiGen's damages and tortious interference claims are valid because the Attorney General's actions have interjected himself into the legal system, inviting a claim for money damages.  By sending letters threatening litigation to NiGen and its retailers, which had the practical effect of securing a preliminary injunction on all sales of NiGen's

products in Texas, the Attorney General invoked court powers and federal and state law that opened the door to a claim for money damages.

Under Texas law, "a governmental entity might waive its immunity by certain actions, even absent a legislative waiver of immunity." *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006) (holding that filing suit constitutes one such action). Although the Attorney General did not formally file suit in this case, his *actions* have served as the functional equivalent of filing suit and have thus waived, under the reasoning set forth in *Reata*, any immunity to which he would otherwise be entitled. The Attorney General's actions (threatening NiGen's retailers with suit and massive fines if they would not pull NiGen's products from their shelves, effectively enjoined the sale of these products in Texas. The Attorney General bypassed the need to ask for preliminary injunctive relief in court by overstepping its constitutional boundaries and bullying NiGen's retailers. As the Attorney General's actions have resulted in a practical preliminary injunction, he has invoked court power and waived his immunity under *Reata*. Furthermore, the Attorney General relied on the DTPA, which includes provisions allowing for counterclaim and other relief against the Attorney General. *See* Tex. Bus. & Com. Code §§ 17.01 *et seq*. In invoking this law, and in obtaining quasi-judicial relief by over-asserting itself vis-à-vis NiGen and its

retailers, the Attorney General has waived any sovereign immunity to money damages he might have otherwise had, and NiGen may accordingly proceed on its damage and tortious interference claims.

### D.     NiGen's Complaint States Valid Claims for Relief.

The Attorney General also argued below that NiGen's claims should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).[7]  None of the Attorney General's arguments made below form a valid basis for dismissal.

### 1.     The complaint states a valid First Amendment claim.

The Attorney General's actions prevented NiGen from using truthful advertising related to lawful activities, which the First Amendment protects. Although the State may regulate truthful commercial speech, such regulation faces enhanced constitutional scrutiny.  Specifically, the State retains the ability to regulate truthful, non-misleading speech that does not concern an unlawful transaction, but it may only do so if "the government's interest is substantial, the restrictions directly advance the government's asserted interest, and the restrictions are no more extensive than necessary to serve that interest."[8]  Put another way,

---

[7] [ROA. 792–812.]

[8] *Texans Against Censorship v. State Bar*, 888 F. Supp. 1328, 1995 U.S. Dist. LEXIS 5329 (E.D. Tex. 1995); *Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 340, 92 L. Ed. 2d 266, 106 S. Ct. 2968 (1986) (citing *Central Hudson Gas & Electric Corp.*

commercial speech that is not false or deceptive and does not concern unlawful

activities may be restricted only if it serves a substantial governmental interest, and

only through means that directly advance that interest. *Zauderer v. Office of*

*Disciplinary Counsel of Supreme Court*, 471 U.S. 626 (U.S. 1985) (*citing Central*

*Hudson Gas & Electric Corp.,* 447 U.S. 557, 566 (1980)).[9]

The complaint alleges that NiGen's advertising and labeling are literally

true.  [ROA. 713, 720–723.]  Thus any government restriction of NiGen's

advertising and labeling must pass enhanced scrutiny.  Yet the Attorney General

made no attempt below to explain how his actions were a proper restriction of

NiGen's commercial speech.

---

*v. Public Service Comm'n of New York*, 447 U.S. 557, 566 (1980)).

[9] In *Texans Against Censorship v. State Bar*, the court explained that "it is helpful to note that the Supreme Court has indicated more tolerance for regulations that impose less restrictive regulations on speech, such as disclosure requirements, than those imposing total prohibitions on speech." *Texans Against Censorship v. State Bar*, 888 F. Supp. 1328, 1995 U.S. Dist. LEXIS 5329 (E.D. Tex. 1995).  *See also Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651, 85 L. Ed. 2d 652, 105 S. Ct. 2265 (1985) ("In virtually all our commercial speech decisions to date, we have emphasized that because disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech, 'warning[s] or disclaimer[s] might be appropriately required . . . in order to dissipate the possibility of consumer confusion or deception'") (quoting *In Re R. M. J.*, 455 U.S. 191, 201 (1982); *see also Bates v. State Bar of Arizona*, 433 U.S. 350, 384, (1977) (holding states may not ban truthful advertisements concerning the availability and terms of routine legal services, but also noting "that some limited supplementation, by way of warning or disclaimer or the like, might be required . . . so as to assure the consumer is not misled."); *In Re R. M. J.*, 455 U.S. at 203 ("the States may not place an absolute prohibition on certain types of potentially misleading information, e.g., a listing in of areas of practice, if the information may also be presented in a way that is not deceptive.").

Instead of analyzing NiGen's First Amendment claim under this proper analysis, the Attorney General contended below that *on its face* the Texas DTPA does not prohibit free speech. [ROA. 794–795.] This argument is inapposite because the complaint does not assert that the DTPA prohibits protected speech on its face. Rather, the complaint asserts that *as applied* to NiGen, the Attorney General's actions to enforce the DTPA were unconstitutional. [ROA. 730–731.]

The complaint carefully chronicles the factual basis for NiGen's claim. The complaint pleads that the Attorney General sent threatening letters instructing NiGen and its retailers to cease selling NiGen's products due to allegedly false and misleading advertising set forth on NiGen's products' packaging. [ROA. 723–728.] As a direct result of these threats, NiGen's customers removed NiGen's products from shelves, significantly damaging NiGen. [ROA. 728, 730–731.] Thus the complaint pleads facts demonstrating that the Attorney General's actions prohibited NiGen's legal speech.

The Attorney General also wrongly argued below that prior restraint analysis cannot apply to commercial speech. [ROA. 795–796.] Among other things, the Attorney General argued that the complaint does not bring NiGen's claim within the traditional concept of prior restraint. [*Id*.] But the United States Supreme Court has defined a prior restraint to mean, among other things, a "flat prohibition"

on speech. *Lowe v. SEC*, 472 U.S. 181, 234 (1985).  That is precisely what the complaint asserts: that the Attorney General's actions prohibited NiGen's lawful advertising and labeling, causing NiGen's customers to stop selling its products.

None of the Attorney General's arguments made below can justify dismissal of NiGen's First Amendment claims.

### 2.     The complaint states a valid Procedural Due Process claim.

Similarly, the Attorney General's arguments below that NiGen failed to state a procedural due process claim are unavailing.  [*See* ROA. 796–799.]  Procedural due process questions are examined in two steps: (1) whether there exists a liberty or property interest, which has been interfered with by the State, and (2) whether sufficient procedural safeguards are employed to assure the deprivation of that interest is not arbitrary.[10]  Procedural due process ensures that government decisions will be made with sufficient procedural safeguards.  *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Weaver v. State*, 265 S.W.3d 523 (Tex. App. Houston 1st Dist. 2008).

---

[10] *Ex parte Robinson*, 116 S.W.3d 794, 796 (Tex. Crim. App. 2003).  *See also Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 212 (2d Cir. 2003) ("The Fourteenth Amendment's Due Process Clause requires [a court] to (1) determine whether the claimant has a property interest, then (2) determine whether [he] received adequate process before being deprived of that interest.").

A procedural due process violation occurs when a government makes decisions without appropriate safeguards. *Weaver,* 265 S.W. 3d at 526. Procedural due process requires an opportunity for a hearing appropriate to the nature of the case. *Id.* The Attorney General asserted below that he merely provided notice of NiGen's alleged DTPA violations to NiGen and its retailers and hence that there can be no Due Process violation. [ROA. 797–799.] This argument is based on an unrealistic and sanitized view of the Attorney General's communications with NiGen and its retailers. It portrays his communications as mere "suggestions" to NiGen and its retailers that NiGen's advertising violated state law. In reality, the Attorney General's communications achieved the same result had he filed suit and obtained a preliminary injunction. By sending his threats to NiGen and its retailers (and subsequently refusing to negotiate or even explain its position), the Attorney General achieved in essence a preliminary injunction without the necessity of procedural safeguards.

At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Scally v. Tex. State Bd. of Med. Examiners*, 351 S.W.3d 434 (Tex. App. Austin 2011) (*citing Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). NiGen's statements on its product packaging are literally true. [ROA. 713, 720–723.] The Attorney General did not have any

scientific or other substantiated basis upon which to base its allegations that

NiGen's packaging violates federal and state law.  [ROA. 715, 728–729.]  The

Attorney General, at a minimum, should have sought to prove his theories in a

court of law rather than threaten NiGen's customers.  Instead, the Attorney General

chose to act as if the issue of deception had already been decided by a court.  His

shoot-first-and-ask-questions-later approach served to accomplish substantially the

same result had he filed suit and obtained relief in court, except that his actions

deprived NiGen of any meaningful hearing and opportunity to be heard. As such,

NiGen's complaint states a cognizable claim for Due Process violations.

### 3.    The complaint states a valid Equal Protection claim.

The Attorney General also improperly contended below that the complaint

fails to state an Equal Protection claim.  [ROA. 799–803.]  The United States

Supreme Court has ruled that equal protection of the law requires not only that

laws be equal on their face, but also that they be executed so as not to deny

equality. *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886); *Zeigler v. Jackson*,

638 F.2d 776, 779 (5th Cir. 1981) ("The unequal application of a state law, fair on

its face, may act as a denial of equal protection.").  "[S]tate action, of a kind that

falls within the proscription of the Equal Protection Clause of the Fourteenth

Amendment, may be brought about through the State's administrative and regulatory agencies just as through its legislature." *Robinson v. State of Florida*, 378 U.S. 153, 156 (1964); *Mahone v. Addicks Utility Dist.*, 836 F.2d 921 (5th Cir. Tex. 1988). The rule for testing official action on equal protection grounds is that the challenged action is presumed to be valid and must be sustained if the classification drawn by the action is rationally related to a legitimate state interest. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40, 105 S. Ct. at 3254-55 (1985). An equal protection challenge, therefore, focuses on three separate elements: first, the classification; second, the purpose which the classification is designed to serve; and third, the "fit" between the classification and the purpose; that is, whether the state could rationally determine that by distinguishing among persons the state could accomplish its legitimate purpose. *Mahone v. Addicks Utility Dist.*, 836 F.2d 921 (5th Cir. Tex. 1988).

The Attorney General discriminated between NiGen's dietary supplements and other dietary supplements containing the names of dietary ingredients such as iron, potassium, and sodium. [ROA. 714, 724.] These ingredients, depending on dosage, delivery method, and purpose of use could are prescription drugs. [ROA. 1085–1086.] The Attorney General discriminates against NiGen by prohibiting the use of "HCG" in the promotion of the Products, while allowing other companies to

use the name of prescription drugs in their dietary supplement advertising. [*Id*. at 732–733.]  These allegations clearly satisfy the first element of an Equal Protection claim.

As to the second element, the Attorney General's ban on the use of the letters "HCG" fails to serve any legitimate state interest, particularly where the letters "HCG" have acquired a secondary meaning of "weight loss".   [ROA. 717.] NiGen's products are not prescription drugs, nor would the public think that they are.  [ROA. 713–714.]  The Attorney General fails to advance any legitimate state interest served by his classification.

Lastly, the Attorney General cannot point to a legitimate state purpose for essentially issuing a blanket prohibition on use of the letters "HCG" in connection with NiGen's products.  This is especially clear inasmuch as the Attorney General admits that the public associates the letters "HCG" with weight loss.  [ROA. 743.] There is no "fit" between the Attorney General's classification and any legitimate state purpose for making the classification.  NiGen's Equal Protection claim is adequately pled.

**4.      The complaint states a valid commerce clause claim.**

The Attorney General has nowhere provided legitimate reasons why the

complaint purportedly fails to state a commerce clause claim. The complaint alleges facts demonstrating that the Attorney General's actions had, at the very least, an incidental effect on truthful advertising outside the state of Texas. [ROA. 734.] This is enough to state a claim.

The U.S. Constitution holds that "Congress shall have Power . . . To regulate Commerce . . . among the several States . . . ." U.S. CONST. art. I, § 8, cl. 3. The power to regulate interstate commerce is extraordinarily far-reaching and authorizes Congress to preempt a broad spectrum of state regulations. *SSC Corp. v. Town of Smithtown*, 66 F.3d 502 (2d Cir. N.Y. 1995). The United States Supreme Court, however, has long interpreted the Commerce Clause "not only as an authorization for congressional action, but also, even in the absence of a conflicting federal statute, as a restriction on permissible state regulation." *Hughes v. Oklahoma*, 441 U.S. 322, 326, (1979). "Accordingly, the Court has treated at least some core area of interstate commercial regulation not as a palimpsest, but rather as a *tabula* that must remain *rasa* until Congress decides to legislate." *SSC Corp. v. Town of Smithtown*, 66 F.3d 502 (2d Cir. N.Y. 1995). "But where other legislative objectives are credibly advanced and there is no patent discrimination against interstate trade, the Court has adopted a much more flexible approach, the general contours of which were outlined in *Pike v. Bruce Church, Inc*., 397 U.S.

137, 142 (1970). . . ." *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978).  In

*Pike*, the Supreme Court held that a state action having only "incidental" effects on

interstate commerce "will be upheld unless the burden imposed on such commerce

is clearly excessive in relation to the putative local benefits." 397 U.S. at 142.

When weighing burdens against benefits, a court should consider both "the nature

of the local interest involved, and . . . whether it could be promoted as well with a

lesser impact on interstate activities." *Id.*; *SSC Corp. v. Town of Smithtown*, 66

F.3d 502 (2d Cir. N.Y. 1995).

It does not matter whether the Attorney General intended to regulate

commerce inside or outside of Texas.  The Attorney General threatened NiGen, a

Utah company, and its retailers with enormous fines if they chose to continue

selling NiGen's products.  [ROA. 723–725, 728.]  Faced with this threat, retailers

immediately acted by removing NiGen's products from retail shelves in Texas, and

in two cases, nationwide.  [ROA. 715, 723–725, 728.]  Furthermore, NiGen cannot

advertise in national magazines or on the internet, because such advertisement

would be accessible in Texas.  Thus the Attorney General's regulation clearly

affected interstate commerce.  The question is then whether this regulation is

excessive in relation to the putative local benefits. *See Pike*, 397 U.S. at 142.

Indeed, even where a legitimate local purpose is found, the court must then

consider, among other things, "whether [that purpose] could be promoted as well with a lesser impact on interstate activities." *Id*. In this case there are no legitimate local benefits to the Attorney General's actions; therefore, the significant impact on interstate activities outweighs the local benefits.

### 5.    The complaint's Supremacy Clause claim is valid.

The Attorney General's argument below alleging that the complaint fails to state a valid Supremacy Clause claim again overlooks the fact that NiGen did not bring a facial challenge to the DTPA but an as-applied challenge to the manner in which the Attorney General proceeded in this case. As the complaint plainly demonstrates, his actions violated the Supremacy Clause of the U.S. Constitution.

The U.S. Constitution reigns supreme over any state action that violates its protections.[11] The complaint alleges that the Attorney General's application of the DTPA and federal law violates various provisions of the U.S. Constitution. [ROA. 715, 730–734.] The Attorney General's actions have also therefore violated the

---

[11] *See, e.g.*, *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 130 S. Ct. 2971, 3016 (U.S. 2010) (noting that "the First Amendment obviously takes precedence over any state law"); *Smith v. Cal.*, 361 U.S. 147, 157 (1959) ("The First Amendment . . . is the supreme law of the land . . . ."); *N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) ("Under the Supremacy Clause of the United States Constitution, 'state laws that conflict with federal law are without effect,' and are preempted." (citing *Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008) (quotation marks omitted))).

Supremacy Clause, which renders invalid any state action in conflicts with the U.S. Constitution.

## <u>CONCLUSION AND PRAYER</u>

For the foregoing reasons, the Order of dismissal should be reversed. The district court erred by dismissing non-monetary claims under the Eleventh Amendment, and none of the other arguments raised by the Attorney General justifies dismissal. Accordingly, NiGen respectfully requests that the Court reverse the district court's judgment and remand the case remanded for further proceedings, and further requests all other relief to which it is justly entitled.

Respectfully submitted,

By: /s/ Jason M. Kerr
Jason M. Kerr
RICE PARKINSON & KERR
5742 W. Harold Gatty Drive
Salt Lake City, UT  84116
Telephone:  (801) 530-2900
Facsimile:   (801) 530-2957

John P. Snow
RICE PARKINSON & KERR
5742 W. Harold Gatty Drive
Salt Lake City, UT  84116
Telephone:  (801) 530-2900
Facsimile:   (801) 530-2957

Stephen P. Allison

HAYNES & BOONE
112 E. Pecan Street, Suite 1200
San Antonio, TX 78205
Telephone:  (214) 651-5000
Facsimile:   (214) 651-5940

Ronald Wayne Breaux
HAYNES & BOONE
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone:  (214) 651-5000
Facsimile:   (214) 651-5940

*Counsel for Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of November, 2014, I electronically filed the foregoing **Brief of Appellant** with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the Appellate CM/ECF system. I further certify that counsel of record are CM/ECF participants and will be served electronically by the Appellate CM/ECF system.


Date: November 13, 2014

By: /s/ Jason M. Kerr
Jason M. Kerr
RICE PARKINSON & KERR
5742 W. Harold Gatty Drive
Salt Lake City, UT  84116
Telephone:  (801) 530-2900
Facsimile:   (801) 530-2957

John P. Snow
RICE PARKINSON & KERR
5742 W. Harold Gatty Drive
Salt Lake City, UT  84116
Telephone:  (801) 530-2900
Facsimile:   (801) 530-2957

Stephen P. Allison
HAYNES & BOONE
112 E. Pecan Street, Suite 1200
San Antonio, TX 78205
Telephone:  (214) 651-5000
Facsimile:   (214) 651-5940

Ronald Wayne Breaux
HAYNES & BOONE
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone:  (214) 651-5000
Facsimile:   (214) 651-5940

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

- ▪ this brief contains 9363 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii), or

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

- ▪ this brief has been prepared in a proportionally spaced typeface using Microsoft word 2010 in 14 point font size in Times New Roman style.

PRICE PARKINSON & KERR

Date: November 13, 2014

By: /s/ Jason M. Kerr
Jason M. Kerr
5742 W. Harold Gatty Drive
Salt Lake City, UT  84116
Telephone:  (801) 530-2900
Facsimile:   (801) 530-2957

John P. Snow
5742 W. Harold Gatty Drive
Salt Lake City, UT  84116
Telephone:  (801) 530-2900
Facsimile:   (801) 530-2957

Stephen P. Allison
HAYNES & BOONE
112 E. Pecan Street, Suite 1200
San Antonio, TX 78205
Telephone:  (214) 651-5000
Facsimile:   (214) 651-5940

Ronald Wayne Breaux
HAYNES & BOONE
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone:  (214) 651-5000
Facsimile:   (214) 651-5940

*Counsel for Appellant*